**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RUSSEL "JOEY" JENNINGS, RINALDO SCRUCI, ROBERT B. CARSON, LAUREN LOTZI, BETH LAMBO, MARIA KASHATUS, DAVID NAULTY, MAUREEN JORDA, JANINE WINSOCK, CYNTHIA MARTIN, TERRY D. HETRICK, SHARON MCCABE** *and* **VIOLA "VIANNE" CAYE,** | : : : : : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:20-0148** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **TOM WOLF, TERESA D. MILLER, KRISTIN AHRENS, SUE RODGERS, MARK J. GEORGETTI, PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, PENNSYLVANIA OFFICE OF DEVELOPMENT PROGRAMS, POLK CENTER** *and* **WHITE HAVEN CENTER,** | : : : : : : | |
| **Defendants** | : | |

## MEMORANDUM

On January 29, 2020, Russel Jennings, Rinaldo Scruci, Robert Carson, Lauren Lotzi, Beth Lambo, Maria Kashatus, David Naulty, Maureen Jorda, Janine Winsock, Cynthia Martin, Terry Hetrick, Sharon McCabe and Viola Caye, (collectively, "Plaintiffs"), all residents of Intermediate Care Facilities

for Individuals with Intellectual Disabilities ("ICF/IID") in the state of Pennsylvania, by and through their guardians or substitute decision makers, filed a complaint in this District seeking equitable and injunctive relief on behalf of a prospective class. The complaint named as defendants Pennsylvania Governor Tom Wolf, the Pennsylvania Department of Human Services ("DHS"), Secretary of the Pennsylvania DHS Teresa Miller, Pennsylvania DHS Office of Developmental Programs ("ODP"), Deputy Secretary of ODP Kristin Ahrens, ICF/IID Polk Center, Polk Center Facility Director Sue Rodgers, ICF/IID White Havens Center, and White Haven Facility Director Mark Georgetti, (collectively, "Defendants").

The complaint contained four separate claims seeking injunctive relief, including claims alleging violations of the Americans with Disabilities Act, 42 U.S.C. §12132; the Rehabilitation Act, 29 U.S.C. §794; various Medicaid federal statutes and regulations incorporated into Pennsylvania Law; and the United States Constitution, 42 U.S.C. §1983. On July 10, 2020, Defendants filed a motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will **DENY** Defendants' motion.

## I.    BACKGROUND

Plaintiffs are individuals suffering from severe intellectual disabilities and other ailments, and are residents of one of two ICF/IIDs in Pennsylvania, Polk Center or White Haven Center. These two centers are operated by the

Pennsylvania Department of Human Services in conjunction with the Center for Medicare and Medicaid Services ("CMS"), and offer various resources and programs including extensive personal care, health care services, ambulation assistance, and significant behavioral support. Accordingly, eligibility for residence in one of these centers allegedly requires "a developmental disability that is a severe, chronic disability of an individual, which is attributable to a mental impairment, physical impairment, or combination of both; is likely to continue indefinitely; results in a combination of functional limitations in major life activities; reflects the need for a combination of special interdisciplinary care or treatment of lifelong or extended duration; and includes, but is not limited to, developmental disabilities, autism, cerebral palsy, epilepsy, spina bifida, and other neurological impairments." *See* (Doc. 1 at ¶¶ 47-48).

On or about August 14, 2019, defendant DHS, through its Secretary, defendant Miller, announced that it would be closing both the Polk Center and the White Haven Center, and projected that the process of closing these facilities would take roughly three years. According to Plaintiffs, before this point, all residents of the Polk Center and the White Haven Center were "evaluated by their treating professionals and determined to be in need of ICF/IID services, and the best setting for Plaintiffs to receive those services was at PC or WHC as determined by the professional judgment of these professionals." As a result, Plaintiffs claim that the Defendants' efforts to relocate the Plaintiffs to other facilities would be improper as the Polk and

3

White Haven Centers provide the least restrictive and most appropriate setting for their needs. Therefore, Plaintiffs seek injunctive and equitable relief to ensure that any potential relocation not result in the Plaintiffs receiving treatment and services in a setting more restrictive to their rights than the current location or failing to meet the accepted professional standards inequal to the care they currently received, and that the Plaintiffs and their treating professionals maintain a certain level of control over placement in a new facility while ensuring that staffing levels are maintained and independent treatment plans are followed.

## II.      STANDARD

The Defendants' motion to dismiss is brought pursuant to the Federal Rule of Civil Procedure Rule 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. This requirement "calls for

enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556.

A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but … disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n. 14 (3d Cir. 2013) (internal citation and quotation marks omitted).   Thus "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" Schuchardt v. President of the United States, 839 F.3d 336, 347 (3d Cir. 2016) (alterations in original) (quoting Iqbal, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." Id.

> Twombly and Iqbal require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer probability that a defendant has acted unlawfully." Connelly v. Lane Constr.

Corp., 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting Twombly, 550 U.S. at 556; then quoting Iqbal, 556 U.S. at 678).

In considering a motion to dismiss, courts generally rely on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). A court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). A court, however, may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.    DISCUSSION

Plaintiffs raise four separate grounds upon which they claim they are entitled to equitable and injunctive relief. These claims include violations of (1) the Americans with Disabilities Act ("ADA"), (2) the Rehabilitation Act ("RA"), (3) the Medicaid Act, and (4) Constitutional Due Process. The Court will separately review these four claims and the grounds upon which Defendants seek dismissal.

A. Claim Preclusion Under Benjamin v. Dept. of Public Welfare

As a preliminary matter, Defendants contend that the current litigation is precluded by the settlement agreement in Benjamin v. Department of Public Welfare, 1:09-cv-01182-JEJ (M.D. Pa.). "The doctrine of claim preclusion 'is not a mere matter of technical practice or procedure but a rule of fundamental and substantial justice.'" Jackson v. Dow Chem. Co., 518 F. App'x 99, 101 (3d Cir. 2013) (quoting Equal Emp't Opportunity Comm'n v. U.S. Steel Corp., 921 F.2d 489, 492 (3d Cir.1990) (internal quotation marks and citation omitted)).

The defense of claim preclusion may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision. Connelly Found. v. Sch. Dist. of Haverford Twp., 461 F.2d 495, 496 (3d Cir. 1972) (res judicata may be raised in motion to dismiss prior to answer). A court may also take judicial notice of the record from a previous court proceeding between the parties. See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n. 3 (3d Cir. 1988). "The party seeking to take advantage of claim preclusion has the burden of establishing it." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 158 (3d Cir. 2001). Specifically, where a defense of claim preclusion is based on a settlement agreement between the parties, "[t]he express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." Toscano v. Connecticut Gen. Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008) (citing Norfolk S. Corp. v. Chevron, U.S.A.,

7

Inc., 371 F.3d 1285 1291 (11th Cir. 2004) (holding that "to preclude a wider range of matters than those specified in the Agreement would frustrate the parties' expressed intent and bestow upon [the defendant] a windfall of immunity from litigation")).

A review of the settlement in Benjamin indicates that the initial class action litigation was brought on behalf of individuals who "currently or in the future will reside in one of Pennsylvania's state ICFs/ID" that "could reside in the community with appropriate supports and services" and "do not or would not oppose community placement." (Doc. 26-1 at 5). Though the Plaintiffs do represent individuals currently residing in a State ICF/IID that may have qualified as members of the Benjamin class,[1] the settlement itself merely provided the choice for class members to move to a community setting if they so desired. *See* (Id. at 19) ("The Planning List will not include any class member who has not chosen or on whose behalf a choice was not made for a community placement."). Instead, "[i]f any class member voluntarily wishe[d] to return to a state ICF/ID," the class member was allowed to do so. (Id. at 26); *see also* Benjamin, 1:09-cv-01182-JEJ (Doc. 399-4 at 3) (class

---

[1] Under the Benjamin settlement agreement, "'Class members' means all individuals who have resided or will reside in a state ICF/ID at any time from the effective date of this Agreement until the termination of this Agreement under Paragraph 40." (Doc. 26-1 at 8). The settlement agreement would thus extend from May 30, 2014 to either June 30, 2018 or thirty days after counsel for Defendants notified counsel for Plaintiffs that the last class member had moved to the community, whichever is later, unless the parties agreed to an extension. (Id. at 36-37).

action settlement notice establishing that "no class member will be removed from a State Center to a community placement, and no class member will be required to remain in a State Center rather than being moved to a community placement, unless that class member or a person authorized to make decisions on behalf of the class member chooses that location for the class member.").

In light of the terms of the agreement, if the Benjamin settlement was to hold sway on the present action, as Defendants argue, it would thus seem that the Plaintiffs would maintain the ability to choose whether they would prefer either a community-based setting or an institutional setting. As the settlement agreement, however, seemingly terminated in June 2018 and the settlement does not reflect the same factual allegations or "waive any potential claims [of] a class member … to challenge or object to a decision to close or attempt to close that state ICF/ID," (Doc. 26-1 at 18), the current litigation appears free from any preclusion.

### B. Americans With Disabilities Act Violation

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. §12132. Under the ADA, the term "qualified individual with a disability" means "an individual with a disability who, with or without

9

reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

To establish a claim under Title II of the ADA, "a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" Haberle v. Troxell, 885 F.3d 170, 178-79 (3d Cir. 2018) (quoting Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 n. 32 (3d Cir. 2007)).

In addition, the parties agree that Plaintiffs' ADA claim is also governed by Olmstead v. L.C., 527 U.S. 581 (1999). *See* (Doc. 29 at 12). Olmstead created a three-prong test that the Supreme Court used to determine when the ADA "require[s] placement of persons with mental disabilities in community settings rather than in institutions." Olmstead, 527 U.S. at 587. Under this test, the Supreme Court established that the state was required to provide community-based services for persons with mental disabilities when "(1) the State's treatment professionals determine that such placement is appropriate, (2) the affected persons do not oppose such treatment, and (3) the placement can be reasonably accommodated, taking into account the resources available to the state and the needs of others." Id. at 606. The

Court noted that the integration mandate "is not boundless" and is limited if integration would be unduly burdensome or require a fundamental alteration of policy. Id. at 603.

Consistent with these provisions, a state "generally may rely on the reasonable assessments of its own professionals in determining whether an individual 'meets the essential eligibility requirements' for habilitation in a community-based program." Id. at 602. "Absent such qualification, it would be inappropriate to remove a patient from the more restrictive setting." Id. (citing 28 CFR §35.130(d) (1998) (public entities shall administer services and programs in "the most integrated setting *appropriate* to the needs of qualified individuals with disabilities" (emphasis added))).

It is unquestioned that Plaintiffs are qualified individuals who suffer from different forms of mental disabilities. *See* 42 U.S.C.A. §12102 (defining the term "disability" under the ADA as, amongst other things, "a physical or mental impairment that substantially limits one or more major life activities of such individual").  It is also unquestioned by the parties that the State intends to close both the Polk and White Haven Centers, and that Plaintiffs will be "denied the benefits of the services, programs, or activities" provided by these facilities. As the Defendants thus do not assert that the Plaintiff failed to meet the basic requirements for an ADA claim, the Court will deny Defendants' motion in this regard.

Instead, Defendants base their motion to dismiss on the Plaintiffs' apparent inability to satisfy the Olmstead factors. Defendants claim that

Plaintiffs are making "[a]n obverse Olmstead argument" through an assertion that if a community-based setting is required when the three Olmstead factors are met, then an institutional setting is required if any of the three Olmstead factors are not met. The Court, however, cannot ascribe such an interpretation to the Plaintiffs' claim. Instead, the Plaintiffs seemingly argue that they are entitled to the medical recommendation of a treating professional, per the first factor of the Olmstead test, to determine the placement best appropriate for Plaintiffs' needs. If such a medical recommendations were to reflect that Plaintiffs would be best suited for an institutional rather than a community-based setting, as Plaintiffs claim, and the other two Olmstead factors were to be met, then attempts by the Defendants to remove Plaintiffs from an institutional setting may constitute a violation of the ADA.[2]

As Plaintiffs allege that a reasonable accommodation that would best reflect the most "integrated setting *appropriate*" for the Plaintiffs would be an

---

[2] In the Court's view, Olmstead would appear to require that a state provide certain placement, be that a community-based or institutional setting, when, in addition to the other two factors, the state's treatment professionals determine that such a placement is appropriate (i.e. constituting "the most integrated setting appropriate to the needs of qualified individuals with disabilities"). In contrast, if one of the Olmstead factors was not met, it may merely be presumed that the state was no longer *per se* required to provide the requested placement, though establishing such a presumption would likely result in ample legal commentary and is not necessary to the analysis here.

institutionalized setting rather than a community-based setting, and that Defendants intend to deprive them of these accommodations, Plaintiffs have met their burden.[3] Accordingly, Defendants' motion to dismiss Plaintiffs' claim under the ADA will be denied.

### C. Rehabilitation Act Violations

It is well settled that the same standard governs both Rehabilitation Act and Americans with Disabilities Act violations. McDonald v. Pennsylvania, 62 F.3d 92, 95 (3d Cir. 1995). Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. §794. The Rehabilitation Act defines an individual with a disability as one who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 706(8)(B).

---

[3] Defendants also assert that the Plaintiffs have not properly pleaded facts sufficient to suggest that integration would not result in a "fundamental alteration." Although Plaintiffs will bear the initial burden of demonstrating the availability of a reasonable accommodation, if Plaintiffs are successful in that task then the burden of proof would shift to the Defendants to establish that the relief demanded would be unduly burdensome or require a fundamental alteration of policy. *See* Frederick L. v. Dep't of Public Welfare, 364 F.3d 487, 492 n. 4 (3d Cir. 2004). An analysis regarding whether Defendants have sufficiently met their burden, however, would not be properly decided at the motion-to-dismiss stage.

To prevail on a claim for violation of the RA, like the ADA, a plaintiff must demonstrate that he or she: (1) has a disability; (2) was otherwise qualified to participate in a federally funded program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of his disability. 29 U.S.C. § 794; Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176 (3d Cir. 2009). The RA, however, also requires the additional showing that the program receives federal financial assistance. 29 U.S.C. § 794(a); Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1009 (3d Cir. 1995). The RA, however, like the ADA, favors "[t]he most integrated setting appropriate to the needs of qualified individuals with disabilities." *See* Frederick L., 364 F.3d at 491 (quoting 28 C.F.R. §35.130(d)).

As set forth above in regards to their claim under the ADA, Plaintiffs sufficiently assert that the proposed class includes qualified individuals suffering from disabilities who face the denial of benefits of the services, programs, or activities of a public entity. In addition, it is clear that Pennsylvania's Medicaid program received federal financial assistance. As a result, Defendants' motion to dismiss Plaintiffs' RA claim will be denied.

### D. Medicaid Act and Regulatory Violations

The Medicaid Act established a combined federal-state funding program for the purpose of providing medical assistance to eligible low-income persons. Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 182 (3d

Cir. 2004). "[O]nce the state voluntarily accepts the conditions imposed by Congress, the Supremacy Clause obliges it to comply with federal requirements." Zahner v. Sec'y Pa. Dep't of Human Servs., 802 F.3d 497, 512 (3d Cir. 2015) (citing Lankford v. Sherman, 451 F.3d 496, 510 (8th Cir. 2006)).

Plaintiffs allege that "[t]he Commonwealth of Pennsylvania has voluntarily assumed certain obligations under federal law in return for federal funding under the Medical Assistance Program authorized by 42 U.S.C. §1396, et seq." (Doc. 1 at ¶ 139). Plaintiffs argue that these obligations include: "(a) choice of an ICF/IID institutional placement, subject to a hearing, under 42 U.S.C. §1396n and 42 CFR §441.302(d); (b) provision of ICF/IID services under 42 U.S.C. §§1396a(a)(10) and 1396d(a)(l5); (c) competent evaluation for placement in an institutional ICF/IID facility under 42 CFR §483.440(b)(3); [and] (d) a continuous active treatment program as defined in 42 CFR §483.440(a)(1)." As Plaintiffs allege that Defendants violated these obligations by deciding to close the Polk and White Haven Centers and Defendants do not claim Plaintiffs failed to meet their burden, the Defendants' motion to dismiss Plaintiffs' Medicaid Act and regulatory violations will be denied.

### E. Constitutional Due Process Violations

Plaintiffs raise a claim under 42 U.S.C. §1983 alleging a deprivation of their civil rights. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. §1983. Thus, to establish a violation of Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. Baker v. McCollan, 443 U.S. 137 (1979); *see also* Hart v. Tannery, 2011 WL 940311 (E.D. Pa. Mar. 14, 2011).

Regarding the constitutional-violation prong of Section 1983, Plaintiffs claim a violation of the Due Process Clause of the Fourteenth Amendment, which prohibits states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, §1. It is

16

unquestioned that the Defendants were "persons acting under the color of state law," as required for any Section 1983 claim. In addition, Plaintiffs claim that Defendants should know or have reason to know that placing the Plaintiffs in other settings, including non-ICF/IID settings, would substantially increase Plaintiffs' likelihood of injury from abuse, neglect, error, lack of appropriate services, or other causes. Defendants' alleged failure to provide such adequate safeguards to prevent such harm would thus arguably be a violation of Plaintiffs' constitutional right not to be deprived of life or liberty without due process of law.

Defendants, in response, argue that any harm to the Plaintiffs resulting from discharge from the Polk or West Haven Centers would be prospective as "[t]heir complaint is based on speculative harm that might occur." Such a determination, however, would be improper at this juncture and would best be reserved for a motion for summary judgment following further factual development. Therefore, Defendants' motion to dismiss Plaintiffs' due process claim will be denied.

## IV.    CONCLUSION

For the reasons discussed above, the Court will **DENY** the Defendants' motion to dismiss. A separate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Date: July 19, 2021**
20-0148-01.wpd

18