## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RUSSEL "JOEY" JENNINGS, RINALDO SCRUCI, ROBERT B. CARSON, LAUREN LOTZI, BETH LAMBO, MARIA KASHATUS, DAVID NAULTY, MAUREEN JORDA, JANINE WINSOCK, CYNTHIA MARTIN, TERRY D. HETRICK, SHARON MCCABE** *and* **VIOLA "VIANNE" CAYE,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:20-0148** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **TOM WOLF, TERESA D. MILLER, KRISTIN AHRENS, SUE RODGERS, MARK J. GEORGETTI, PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, PENNSYLVANIA OFFICE OF DEVELOPMENT PROGRAMS, POLK CENTER** *and* **WHITE HAVEN CENTER,** | : | |
| **Defendants** | : | |

## MEMORANDUM

On January 29, 2020, Russel Jennings, Rinaldo Scruci, Robert Carson, Lauren Lotzi, Beth Lambo, Maria Kashatus, David Naulty, Maureen Jorda, Janine Winsock, Cynthia Martin, Terry Hetrick, Sharon McCabe and Viola Caye, (collectively, "Plaintiffs"), all residents of Intermediate Care Facilities

for Individuals with Intellectual Disabilities, ("ICFs/IID"), in the state of Pennsylvania, by and through their guardians or substitute decision makers, filed a complaint, (Doc. 1), in this District seeking equitable and injunctive relief on behalf of a prospective class. The complaint named as defendants Pennsylvania Governor Tom Wolf, the Pennsylvania Department of Human Services ("DHS"), Secretary of the Pennsylvania DHS Teresa Miller, Pennsylvania DHS Office of Developmental Programs ("ODP"), Deputy Secretary of ODP Kristin Ahrens, ICF/IID Polk Center, Polk Center Facility Director Sue Rodgers, ICF/IID White Haven Center, and White Haven Facility Director Mark Georgetti, (collectively, "Defendants").

The complaint contained four separate claims seeking injunctive relief, including claims alleging violations of: the Americans with Disabilities Act, 42 U.S.C. §12132; the Rehabilitation Act, 29 U.S.C. §794; various Medicaid federal statutes and regulations incorporated into Pennsylvania Law; and the United States Constitution, 42 U.S.C. §1983. In response to the Plaintiffs' complaint, the Defendants filed a motion to dismiss on August 31, 2020. (Doc. 16).

While the parties filed briefs in response to the Defendants' motion to dismiss, further motions were filed including: a motion for class certification filed by the Plaintiffs on October 14, 2020, for a proposed class of "284 residents of Polk Center and White Haven Center" pursuant to Federal Rules of Civil Procedure 23, (Doc. 19); a motion to intervene filed by the "certified Settlement Class in Benjamin v. Dep't of Human Services, Civil Action No.

1:09-cv-1182-JEJ (M.D. Pa. 2009)," (Doc. 25); and a motion to stay class certification pending the resolution of the pending motions, (Doc. 37). In response, this Court granted the Defendants' motion to stay class certification, (Doc. 65), while the Defendants' motion to dismiss and motion to intervene remained pending. Thereafter, on July 19, 2021, this Court denied the Defendants' motion to dismiss the Plaintiffs' complaint. (Doc. 72). This Court, therefore, will address the remaining motion to intervene filed by the settlement class in Benjamin v. Dep't of Human Services, (the "Benjamin Class" or "Proposed Intervenors"). For the reasons set forth below, the Court will DENY the Proposed Intervenors' motion.

## I.    BACKGROUND

In 2009, residents of Pennsylvania ICFs/IID filed a class action lawsuit against the Pennsylvania DHS and the Secretary of the Pennsylvania DHS arguing that the DHS had failed to provide appropriate community-based services for members of the proposed class. The plaintiffs in this matter, Benjamin v. Dep't of Human Services, 1:09-cv-1182-JEJ (M.D. Pa. 2009), alleged that the DHS thus violated Title II of the Americans with Disabilities Act, ("ADA"), and Section 504 of the Rehabilitation Act, ("RA") by failing to offer and provide community alternatives. Under Rule 23(b)(2) of the Federal Rules of Civil Procedure, the court in Benjamin certified a class, (the "Benjamin Class"), consisting of all individuals who "(1) currently or in the future will reside in one of the Pennsylvania's state ICFs/MR; (2) could reside

3

in the community with appropriate supports and services; and (3) do not or would not oppose community placement." <u>1:09-cv-1182-JEJ</u> at (Doc. 105-2).

Following the conclusion of discovery, the <u>Benjamin</u> court granted the plaintiffs' motion for summary judgment, "[r]ejecting DHS's argument that it had a viable integration plan to provide community services to class members" in violation of the ADA and RA. In light of the court's decision, DHS and the Benjamin Class entered into mediated discussions to determine a proper resolution of the issues facing the members of the class, and in May 2011, the parties entered into an initial settlement agreement to provide choice to class members or their guardians as to whether the members would prefer to live in a state ICF/IID or a community placement. A notice was eventually filed with the Benjamin Class, and though several state ICF/IID residents filed objections to the proposed settlement agreement and moved to intervene, the court eventually denied the objections and motions to intervene and approved the initial proposed settlement agreement. <u>Benjamin, 1:09-cv-1182-JEJ</u> at (Doc. 281).

Nevertheless, following an appeal of the court's denial of the motions to intervene, the Court of Appeals remanded the matter to the district court to grant the motions and allow the intervenors to both seek decertification of the class and challenge the initial settlement agreement between the parties. Thereafter, the parties and intervenors reentered settlement discussions and executed a revised settlement agreement with similar terms as to the initial settlement agreement, (the "Benjamin Settlement"). <u>Benjamin, 1:09-cv-</u>

4

1182-JEJ at (Doc. 339-3); (Doc. 26-1). Specifically, members of the Benjamin Class with the capacity to make an informed choice, the guardians or substitute decision-makers of the members of the Benjamin Class, or the other decision-makers pursuant to the terms of the Benjamin Settlement, were given the ability to choose whether each Benjamin Class member would be added to the "Planning List," which consisted of members "for whom [the state] is to provide community placements." The Benjamin defendants were then required to develop "an individualized plan to enable [each] class member [on the Planning List] to move to the community" and "implement a viable integration plan for those class members."[1]

In addition to the provisions of the Benjamin Settlement providing choice to members of the Benjamin Class as to whether an ICF/IID facility or a community-based setting would be better suited for their individual needs, the Benjamin Settlement also provided protections for those who chose to remain in state ICFs/IID. *See* (Doc. 26-1 at 18) (DHS was required to "maintain the level of care currently provided to class members in state

---

[1] The Benjamin Settlement also set forth a placement schedule seemingly to ensure that the members of the Benjamin Class on the Planning List were moved to a community-based setting in a reasonable period of time. *See* (Doc. 26-1 at 19-20). The Court, however, lacks a clear indication whether this schedule was followed. The Benjamin Settlement was set to "terminate on June 30, 2018 or thirty (30) days after counsel for Defendants notifies counsel for Plaintiffs and counsel for Intervenors that the last class member on the Planning List as of June 30, 2018, has moved to the community, whichever is later." (Doc. 26-1 at ¶ 40).

ICFs/ID and [] assure that the state ICFs/ID continue to meet the criteria needed to satisfy all federal and state certification and licensure requirements; to protect the health, welfare, and safety of class members; and to provide class members with active treatment"). Furthermore, the Benjamin Settlement also established that "[n]o provision of this [Settlement] Agreement shall be construed to waive any potential claims that a class member, or a guardian or substitute decision-maker acting on behalf of the class member, may assert … to challenge or object to a decision to close or attempt to close that ICF/ID." (Doc. 26-1 at 18). The District Court in Benjamin approved the revised settlement agreement on September 25, 2014.

Plaintiffs in the present action, similar to certain members of the Benjamin Class, are individuals suffering from severe intellectual disabilities and other ailments, and are residents of one of two ICFs/IID in Pennsylvania, Polk Center or White Haven Center. These two centers are operated by the Pennsylvania Department of Human Services in conjunction with the Center for Medicare and Medicaid Services, ("CMS"), and offer various resources and programs including extensive personal care, health care services, ambulation assistance, and significant behavioral support. Accordingly, eligibility for residence in one of these centers allegedly requires "a developmental disability that is a severe, chronic disability of an individual, which is attributable to a mental impairment, physical impairment, or combination of both; is likely to continue indefinitely; results in a combination

6

of functional limitations in major life activities; reflects the need for a combination of special interdisciplinary care or treatment of lifelong or extended duration; and includes, but is not limited to, developmental disabilities, autism, cerebral palsy, epilepsy, spina bifida, and other neurological impairments." *See* (Doc. 1 at ¶¶ 47-48).

On or about August 14, 2019, defendant DHS, through its Secretary, defendant Miller, announced that it would be closing both the Polk Center and the White Haven Center, and projected that the process of closing these facilities would take roughly three years. According to Plaintiffs, before this point, all residents of the Polk Center and the White Haven Center were "evaluated by their treating professionals and determined to be in need of ICF/IID services, and the best setting for Plaintiffs to receive those services was at PC or WHC as determined by the professional judgment of these professionals." As a result, Plaintiffs claim that the Defendants' efforts to relocate the Plaintiffs to other facilities would be improper as the Polk and White Haven Centers provide the least restrictive and most appropriate settings for their needs. Therefore, Plaintiffs seek injunctive and equitable relief to ensure that any potential relocation not result in the Plaintiffs receiving treatment and services in a setting more restrictive to their rights than the current location or failing to meet the accepted professional standards inequal to the care they currently received, and that the Plaintiffs and their treating professionals maintain a certain level of control over

placement in a new facility while ensuring that staffing levels are maintained and independent treatment plans are followed.

In light of the Plaintiffs' claims, members of the Benjamin Class seek to intervene in this action in order to "protect [their] substantial legal interests in the continued vitality of the Revised Settlement."

## II.   STANDARD

Federal Rule of Civil Procedure 24(a)(2) provides in pertinent part that "the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The United States Court of Appeals for the Third Circuit has held that a non-party is permitted to intervene under Fed. R. Civ. P. 24(a)(2) only if:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 365-66 (3d Cir. 1995) (quoting Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987)). Each of these requirements must be met to intervene as of right. Id.

A proposed intervenor, however, may also be allowed to intervene as a "court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Such "permissive intervention" is a purely discretional decision left to the court, and "[i]n exercising its discretion, the [district court] must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## III.   DISCUSSION

Intervention under the Federal Rules of Civil Procedure is governed by Rule 24. Rule 24 sets forth the restrictions for claiming an intervention as of right or permissive intervention. As the Benjamin Class seeks to intervene under either form, the Court will review both paths for intervention in turn.

A. Intervention as of Right

Intervention as of right must be granted when a party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A movant seeking to intervene by right under Rule 24(a)(2) must establish that: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately

represented by an existing party in the litigation." In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005) (quoting Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987)); see also Benjamin v. Dep't of Pub. Welfare of Pennsylvania, 701 F.3d 938, 948 (3d Cir. 2012). In accordance with the four elements to support intervention as of right, the Plaintiffs do not contest that the motion to intervene by the Benjamin Class was timely. Therefore, the Court will turn to whether the Proposed Intervenors have a sufficient interest in this litigation to necessitate intervention or whether such an interest would be affected or impaired by the disposition of the action.

To maintain a "sufficient interest" to the degree that requires a party be allowed to intervene, the intervenor must "demonstrate that there is a tangible threat to a legally cognizable interest." Harris v. Pernsley 820 F.2d 592, 601 (3d Cir. 1987). Though "the court is not limited to consequences of a strictly legal nature ... [but] may consider any significant legal effect on the applicant's interest," the proposed intervenor "must do more than show that his or her interests may be affected in some incidental manner." Id. (citations omitted).

The Proposed Intervenors claim that they maintain sufficient interest in this litigation as they look to "ensur[e] that the Revised Settlement is not disturbed or undermined in this lawsuit and ... assert[] the defense of claim preclusion as a bar against collateral attacks on the Revised Settlement." (Doc . 26 at 16). To consider that such an interest exists and may be impaired, this Court must determine whether the Proposed Intervenors could

10

realistically assert a successful claim preclusion defense in the present litigation[2] or that the Benjamin Class's rights in the Benjamin Settlement will be affected as a practical matter by a judgment in favor of the Plaintiffs.

The principles of *res judicata* or claim preclusion are designed to protect parties from facing claims arising from the same events or involving the same issues. General Elec. Co. v. Deutz AG., 270 F.3d 144, 158-59 (3d Cir. 2001); *see also* Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) (claim preclusion requires: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action"). Claim preclusion may thus be applied as a consequence of settlement agreements to "serve[] the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that 'prevent relitigation of settled questions at the core of a class action.'" Blunt v. Lower Merion School Dist., 767 F.3d 247,

---

[2] The Proposed Intervenors argue that "[i]n assessing the Motion for Intervention … the only issue should be determining whether the existence of the Revised Settlement gives the Benjamin Class a legally protictible interest sufficient to intervene in this case" as making a judgment as to the merits of their *res judicata* defense would be "put[ting] the cart before the horse." (Doc. 41 at 4). Though allowing third parties to blindly intervene to raise claims or defenses, as the Proposed Intervenors suggest, would likely undermine the main purpose of the intervention standard – to ensure judicial economy – the Second Circuit, upon which the Proposed Intervenors rely, also allows for courts to resolve the "ultimate merits of the claims" on a motion to intervene where the allegations are "frivolous on their face." The Court finds that such is the case here.

281 (3d Cir. 2014) (citing In re Prudential Ins. Co. of Am. Sales Practice Litig.,
261 F.3d 355, 366 (3d Cir. 2001)). As the Proposed Intervenors contend,
"[t]he terms of the settlement agreement determine the bounds of preclusion
after a settlement." (Doc. 26 at 16 (citing Toscano v. Connecticut General
Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008)).

At issue here is thus the reach of the Benjamin Settlement, which the
Proposed Intervenors argue would be jeopardized by the current litigation
and precludes the Plaintiffs' claims. In contrast, "[t]he plaintiffs believe that
the Settlement has functionally or practically terminated as to them ... [and]
the Settlement does not serve to bar the Plaintiffs' claims." (Doc. 49 at 2,
n.1). Though the Court does not make a determination as to whether the
Benjamin Settlement has terminated,[3] the terms of the Benjamin Settlement
clearly do not apply to instances where the state takes steps to close an
ICF/IID. See (Doc. 26-1 at 18) ("[n]o provision of this [Settlement] Agreement

---

[3] As stated above, under the Benjamin Settlement, "'Class members'
means all individuals who have resided or will reside in a state ICF/ID at any
time from the effective date of this Agreement until the termination of this
Agreement under Paragraph 40." (Doc. 26-1 at 8). The Benjamin Settlement
for those class members would "extend from May 30, 2014, to either June
30, 2018, or thirty days after counsel for the Benjamin defendants notified
counsel for the Benjamin plaintiffs that the last class member seeking to
move to the community had been moved, whichever is later, unless the
parties agreed to an extension." (Id. at 36-37); but see (Doc. 49 at 2, n.1)
(the Plaintiffs concede that as of the date of the parties' filings, there may still
remain "persons on the Planning List as of June 30, 2018, ... still not [] placed
in the community").

shall be construed to waive any potential claims that a class member, or a guardian or substitute decision-maker acting on behalf of the class member, may assert … to challenge or object to a decision to close or attempt to close that ICF/ID").

As the Plaintiffs, through the current litigation, seek to stop the Defendants from moving the Plaintiffs irrespective of treatment plans by closing the Polk and White Haven Centers as "[n]on-ICF/IID-certified settings are not able to reasonably provide the same level of care as an ICF/IID-certified facility" and "[a]lternative ICF's/IID are not and will not be available," the current litigation appears free from any preclusion.[4] Therefore, the Court

---

[4] The Proposed Intervenors argue that "[w]hile the Jennings plaintiffs have taken pains not to directly ask the Court for injunctive relief to stop the planned closures of Polk and White Haven Centers, the injunctive relief they request would in fact require the Court to enjoin DHS to keep those institutions open indefinitely." (Doc. 26 at 11, n.5); see also (Doc. 49 at 10) ("the focus of Plaintiffs' Complaint is on stopping inappropriate and harmful coerced moves to the more restrictive 'community' environments where their needs cannot be met"). The Court does not necessarily disagree with this contention, but whether such injunctive relief is requested and later granted is likely best argued by the parties that will be most impacted by the status of these facilities: the Plaintiffs and Defendants. The Court, however, does accept that the crux of this litigation is focused on the Defendants' efforts to close two ICFs/IID and the Plaintiffs' efforts to stop the closing of those facilities where alternative forms of care are, in the Plaintiffs' views, insufficient to meet their needs. See (Doc. 36 at 6) (citing section of the Benjamin Settlement allowing challenges to efforts by the state to close ICFs/IID as grounds to negate claim preclusion).

agrees that "the Settlement does not serve to bar the Plaintiffs' claims" and is insufficient to force the Court to grant intervention.

Furthermore, the Proposed Intervenors do not and, in the Court's view, cannot show that the Benjamin Settlement would be negatively affected as a practical matter by a judgment in the Plaintiffs' favor.[5] Instead, it appears that the goals of the Plaintiffs and the relief they seek are meant to ensure that they retain the choice between a community-based setting and an appropriate ICF/IID as set forth in the Benjamin Settlement. *See* Benjamin, 1:09-cv-01182-JEJ (Doc. 339-4 at 3) (class action settlement notice establishing that "no class member will be removed from a State Center to a community placement, and no class member will be required to remain in a State Center rather than being moved to a community placement, unless that class member or a person authorized to make decisions on behalf of the class member chooses that location for the class member"). By ensuring that the Polk and White Haven Centers remain open and operational, the Plaintiffs would thus also ensure that, to the degree the Benjamin Settlement allowed, "[i]f any class member voluntarily wishe[d] to return to a state

_____

[5] Though the Proposed Intervenors argue that they seek to protect the Benjamin Settlement by intervening in the present litigation, their arguments, particularly regarding the assertion of claim preclusion as to the Plaintiffs' claims, indicate that they intend to oppose the Plaintiffs' efforts to keep the Polk and White Haven Centers operational. Any claims to the contrary would instead seemingly be protected by the Plaintiffs' efforts and interests in keeping these ICFs/IID open, which would make intervention unnecessary. *See infra* at 15.

ICF/ID," the class member retained the option to do so. (Doc. 26-1 at 26). The Benjamin Class thus fails to sufficient allege that there is "a tangible threat to a legally cognizable interest," and so allowing the Benjamin Class to intervene in this matter is not necessary or mandatory by right. [6]

As the Proposed Intervenors have therefore failed to establish that a sufficient interest exists that may be negatively affected or impaired by the disposition of this matter, it is unnecessary for the Court to determine whether any such interest would be adequately protected. The Court, however, does suspect that the Plaintiffs will vigilantly advocate to protect the choice provided to the Benjamin Class through the Benjamin Settlement as the Defendants threaten to close the Polk and White Haven Centers. *See* Brody, 957 F.2d at 1123 (setting forth the standard to determine whether the proposed intervenor's interests would be adequately represented). [7]

_____

[6] The Proposed Intervenors rely on Jansen v. City of Cincinnati, 904 F.2d 336, 342 (6th Cir. 1990), in arguing that applicants have a significant legal interest where they were "parties to the consent decree challenged in [the] action." The Court, however, must differentiate the current litigation from Jansen as the rights under a consent decree and rights under a settlement agreement differ and the Benjamin Settlement clearly states that "[t]he Agreement is not, and is not to be construed as, a consent decree." (Doc. 26-1 at 35).

[7] Though the Proposed Intervenors argue they should be allowed to intervene to protect the Benjamin Settlement, it can be argued the Plaintiffs likewise seek to protect those same rights. *Compare* (Doc. 1) (seeking injunctive relief to allow "each Plaintiff to choose: (i) to accept or reject the recommendation of the multidisciplinary evaluation; and (ii) to receive treatment in accordance with the independent recommendations of the multidisciplinary evaluation, either at his/her current residence, another state

Therefore, the Proposed Intervenors' motion for intervention as of right will be denied.

### B. Permissive Intervention

In comparison to an intervention as a matter of right, under Rule 24(b), a "court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the [district court] must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); District courts, however, have broad discretion as to whether to allow permissive intervention. U.S. v. Territory of Virgin Islands, 748 F.3d 514, 524 (3d Cir. 2014); see also Brody, 957 F.2d at 1124 (if an applicant "cannot meet the test for intervention as of right, then, under the circumstances of this case it would likely be within the district court's discretion to deny permissive intervention as well").

As the Defendants intend to close both the Polk and White Haven Centers, it is clearly appreciated that the current litigation must operate on a deadline. The introduction of the claims proposed by the Proposed Intervenors, however, would merely add further impediments to a timely resolution of this matter. See (Doc. 65) (class certification stayed pending

---

operated ICF/IID, or non-ICF/IID certified setting, as the Plaintiff deems appropriate") with (Doc. 26-1 at 19) ("[t]he Planning List will not include any class member who has not chosen or on whose behalf a choice was not made for a community placement").

16

the rulings on the Defendants' motion to dismiss and the Proposed Intervenor's motion to intervene). The Court therefore finds that it would not be in the best interest of the parties to allow the Proposed Intervenors to raise further defenses that the Court has determined will not succeed on the merits. The Proposed Intervenors' motion for permissive intervention will therefore be denied.

## IV.   CONCLUSION

For the reasons discussed above, the Court will **DENY** the Proposed Intervenors' motions to intervene as of right and **DENY** the motion to permissively intervene. A separate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 27, 2021**
20-0148-02.

17