Thomas B. York
1205 Argus Road
Kill Devil Hills, NC 27948
(717) 495-4555
tyork@yorklaw.us
*Attorney for Plaintiffs*

Matthew Skolnik
Nicole DiTomo
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
mskolnik@attorneygeneral.gov
nditomo@attorneygeneral.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUSSEL "JOEY" JENNINGS, *et al.*, | : | No. 3:20-CV-0148 |
| Plaintiffs | : | |
| | : | Magistrate Judge Carlson |
| v. | : | |
| | : | |
| TOM WOLF, *et al.*, | : | |
| Defendants | : | |

SECOND JOINT CASE MANAGEMENT PLAN

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Second Joint Case Management Plan.[1]

[1] Defendants respectfully submit that the caption should be amended as follows: at least four Plaintiffs should be removed from the caption due to their deaths (*see* Doc. 126); Acting Secretary Meg Snead has been substituted for former defendant Teresa Miller; defendants Pennsylvania Office of Development Programs, Polk Center, and White Haven Center are mere subdivisions of PA DHS and, thus, are not proper defendants; and defendants Georgetti and Rodgers should be voluntarily dismissed by Plaintiffs because they have no authority to

**1. Principal Issues**

1.1 Separately for each party, please give a statement summarizing this case:

By plaintiff(s):

The Plaintiffs, who are individuals with profound or severe intellectual disabilities and their guardians, are seeking the enforcement of their federal rights to prevent their severe injury or death that allegedly would result from being forced to move from Polk and White Haven Centers (ICF/IID's). This action is for declaratory and injunctive relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Section 504"), the Medical Assistance Program authorized by 42 U.S.C. 1396, et seq., and the United States Constitution. The Defendants incorrectly and unfairly assume that a community-based facility or another ICF/IID should be automatically considered the most integrated type of living arrangement under ADA standards. In reality, the "institutional" care at Polk and White Haven, at least for the Plaintiff Class, presents a more integrated approach to living based upon individual circumstances and needs. Community placements and alternative ICF placements are being sought by the Defendants for residents without full consideration of the needs of the residents. "Community" placement or placement in another ICF is inappropriate for most, if not all, residents of Polk and White Haven, yet, nonetheless the Defendants are pursuing alternative residences for all Plaintiffs. The Plaintiffs are medically and developmentally most appropriately served at the Polk or White Haven Centers instead of any alternative setting. The Defendants' policies and procedures have interfered with or usurped the ability of Plaintiffs' treating professionals to make independent and sound professional judgments. The treating professionals are now often following a political or administrative agenda rather than accepted professional standards. The services provided to Plaintiffs cannot be reasonably replicated in alternative residential settings. The proposed alternative settings are not able to reasonably provide the same level of care as Polk Center and White Haven Center. Defendants have, or will, unduly influence or compel Plaintiffs to receive services in alternative facilities. Those services are inferior to the services provided at Polk and White Haven Centers. Defendants know or should know of the increased danger of death,

---

effectuate the requested equitable relief, even if Plaintiffs prevail. The Plaintiffs have no objection to removing deceased named Plaintiffs from the caption. The Plaintiffs also have no objection to substituting Meg Snead for Teresa Miller. The Plaintiffs do object to any other changes at this late stage of the litigation, as they do not have sufficient time to address these alleged issues or arguments in the context of a case management plan.

abuse, and neglect to which Plaintiffs will be subjected if they are discharged from Polk or White Haven Centers, as sought by Defendants' political plan to downsize or close all the Developmental Centers. Each Plaintiff has a constitutional right, a life and liberty interest in, and a statutory entitlement to receive treatment and services from the Commonwealth of Pennsylvania in the most appropriate setting for his or her needs. Pursuant to 42 U.S.C. § 12134, Defendants are under a constitutional and statutory duty to: (a) effectuate the placement of Plaintiffs in the "most integrated setting appropriate to the needs of qualified individuals with disabilities," a setting that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible" (28 C.F.R. pt. 35 app. A.); (b) not place Plaintiffs in more restrictive or dangerous placements than they currently enjoy; (c) effectuate appropriate institutional placement for each Plaintiff; (d) propose an ICF/IID-certified institutional discharge appropriate for the Plaintiffs only where medically and therapeutically appropriate upon an impartial multidisciplinary evaluation; (e) ensure that Plaintiffs, Plaintiffs' guardians and/or Plaintiffs' families understand their right to receive treatment and care at an ICF/IID-certified facility prior to seeking consent to discharge a Plaintiff from the Center; (f) obtain the input and informed consent of Plaintiffs, Plaintiffs' guardians and/or Plaintiffs' families for such transfers. Defendants are obligated to provide treatment and services to individuals residing in the Centers consistent with the Americans with Disabilities Act and implementing regulations. 42 U.S.C. §§ 12101-12213; 28 C.F.R. pt. 35 (2006). Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified person with disabilities shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). Regulations implementing Section 504 require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. 28 CFR § 41.51(d). Defendants have an obligation to ensure that Plaintiffs' needs and preferences are being met in their multidisciplinary plan. The Commonwealth of Pennsylvania has voluntarily assumed certain obligations under federal law in return for federal funding under the Medical Assistance Program ("MAP") authorized by 42 U.S.C. § 1396, et seq. Defendants have failed, or will fail, to ensure that Plaintiffs' needs and preferences are being met in their multidisciplinary plan as required by MAP. The Defendants have demonstrated a pattern or practice of egregious and flagrant acts or omissions which violate federal rights of the WHC and PC residents, rights which are protected by the Fourteenth Amendment to the Constitution of the United States. Defendants know or should know that placing the Plaintiffs in other settings, including non-ICF/IID settings, will substantially increase their likelihood of injury and death from abuse, neglect,

error, lack of appropriate services, and other causes. Defendants' failure to provide adequate safeguards to prevent such harm is a violation of Plaintiffs' constitutional right not to be deprived of life or liberty without due process of law. Defendants' actions and inactions constitute a violation of Plaintiffs' federal rights, as protected by the Fourteenth Amendment to the Constitution of the United States and other federal laws.

The Plaintiffs are deeply concerned that they cannot fully and fairly prepare for the trial of the recently certified class action in the very limited time before the Defendants intend to complete the moves of Plaintiff class members.   The Plaintiffs have herein suggested a schedule that complies with the direction of the Court that the case go to full trial within roughly 60 to 90 days.   However, this proposed schedule may prove to be too optimistic and unrealistic.   Furthermore, even if this proposed schedule can be achieved, the Defendants may have diminished or defeated the Plaintiffs' causes of actions by moving residents in the interim.

By defendant(s):

Defendants deny any liability. Defendants are under no obligation to leave the two state-operated intermediate care facilities open, nor is there any federal or state requirement for residents' consent to move from one state-operated ICF to another. Defendants also assert there are sufficient supports and services available outside of these two centers to meet Plaintiffs' needs, whether that be through other state-operated intermediate care facilities, private ICFs, or community homes.

1.2   The facts the parties dispute are as follows:

a. Whether White Haven Center and Polk Center are the least restrictive environments that are available to meet the needs of the Plaintiffs?
b. Whether any potential harm to the Plaintiffs from their transfer to other settings, including other ICF's, substantially outweighs the interests of the Defendants in seeking the closure of Polk and White Haven Centers?
c. Whether all the needs of the Plaintiffs can be appropriately and sufficiently met in any suggested alternative placements outside of Polk and White Haven Centers?
d. Whether the Plaintiffs have had, or imminently will have, their rights to receive ICF/IID-level services at Polk or White Haven Centers denied?
e. Whether the Defendants made the decision to downsize or depopulate Polk and White Haven Centers without regard to the needs of the individual

    Plaintiffs, their individual support plans (which are developed in conjunction with their treating professionals), or their rights to receive services in the least restrictive setting appropriate to their needs?

f. Whether Plaintiffs' guardians or substitute decision makers have or have not cooperated with PA DHS's efforts to engage in transition planning for residents of Polk and White Haven Centers.

g. Whether some family members of Named Plaintiffs have interfered with PA DHS's efforts to engage in transition planning for residents of Polk and White Haven Centers.

    1.3    The legal issues the parties <u>dispute</u> are as follows:

a. Whether Plaintiffs have a right to receive ICF/IID-level of services from the Defendants at Polk and White Haven Centers?

b. Whether the Defendants have acted, or failed to properly act, under the color of state law, pursuant to the protections of the Fourteenth Amendment to the Constitution of the United States?

c. Whether the Plaintiffs have a constitutional right, a life and liberty interest in, and a statutory entitlement to receive treatment and services from the Commonwealth of Pennsylvania in the most appropriate setting for his or her needs?

d. Whether the discharges or transfers being forced on Plaintiffs without their consent, or the consent of their guardians or families, and without appropriate recommendations from treating professionals, violate the Americans with Disabilities Act, 42 U.S.C. §§ 12131 – 12134?

e. Whether Defendants requiring that Plaintiffs be discharged or transferred from Polk and White Haven Centers to other settings is in violation of Section 504's integration mandate?

f. Whether the Defendants have utilized criteria and methods of administration that subject Plaintiffs and class members to discrimination on the basis of disability, by (1) failing to assess properly the services and supports that would enable Plaintiffs to receive services and treatment in the most appropriate settings for their needs, (2) failing to develop proper individualized transition plans, (3) failing to allow guardians to be a meaningful part of the planning process, (4) failing to inform Plaintiffs of all of their options for receiving services, and (5) allocating resources for non-ICF/IID care contrary to the desires and needs of people with disabilities?

g. Whether the Commonwealth of Pennsylvania has voluntarily assumed

    certain obligations under federal law in return for federal funding under the Medical Assistance Program (“MAP”) authorized by 42 U.S.C. § 1396, et seq., and have failed, or will fail, to ensure that Plaintiffs’ needs and preferences are being met in their multidisciplinary plan as required by MAP?

h. Whether the Defendants have demonstrated a pattern or practice of egregious and flagrant acts or omissions which violate federal rights of the WHC and PC residents, rights which are protected by the Fourteenth Amendment to the Constitution of the United States?

i. Whether Defendants have failed to provide adequate safeguards to prevent harm in violation of Plaintiffs’ constitutional right not to be deprived of life or liberty without due process of law?

j. Whether Plaintiffs’ proposed relief would constitute a fundamental alteration of the Commonwealth’s provision of federally funded medical services, programs or activities.

agree upon are as follows:

None that are dispositive of any issues in the Complaint.

1.4 Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

None

1.5 Identify any named parties that have not yet been served:

None

1.6 Identify any additional parties that:

plaintiff(s) intends to join:

None, as the class action has now been certified.

defendant(s) intends to join:

None

1.7 Identify any additional claims that:

plaintiff(s) intends to add:

None at this time.

defendant(s) intends to add:

None

## 2.0 Disclosures

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1).

## 3.0 Early Motions

Identify any motion(s) whose early resolution would likely have a significant effect either on the scope of discovery or other aspects of the litigation:

The Plaintiffs are drafting a motion to compel as to discovery responses by the Defendants. Defendants assert that any such motion would be untimely, in light of the extended discovery deadline of August 22, 2022 having passed (by more than three months) without the filing of any such motion related to Defendants' written responses of August 19, 2022, or their subsequent document productions of documents in September of 2022 and later.

## 4.0 Discovery

4.1 Briefly describe any discovery that has been completed or is in progress:

By plaintiff(s): Plaintiffs' counsel has served interrogatories and requests for production, and the Defendants have responded and produced more than 32,000 pages of responsive documents. The Plaintiffs, as previously noted, believe the responses were inadequate. The Plaintiffs

completed four depositions of named Defendants or of officials/employees of the Defendants.

By defendant(s): Defendants' counsel served interrogatories/ requests for production, and Plaintiffs responded thereto with objections and without producing any documents. Defendants completed the deposition for one named Plaintiff's representative, during which time the witness (Susan Jennings) was asked to provide documents she identified during the deposition but those documents were not provided.

4.2 Describe any discovery that all parties agree should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it:

The parties do not agree about the proposed terms of additional discovery.

4.3 Describe any discovery that one or more parties want(s) to conduct but to which another party objects, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

The Plaintiffs seek more complete and adequate responses to their interrogatories and requests for production. The Plaintiffs seek additional discovery as to the comparability of supports and services at the various state-operated ICF's, including the opportunity for up to two to three of their experts to observe and review services at all four state-operated ICF's. The Plaintiffs also seek the health care records, including any transition planning, for all class members, which were not previously provided before the class was certified. The Plaintiffs' experts should be allowed to expand their reports to address the entire class, or a representative sample of the class, at their discretion. The Plaintiffs also seek discovery as to the alleged $21 million in savings that the Defendants claim will be realized by the closure of Polk and White Haven Centers, and an opportunity, if appropriate, to present expert and/or lay testimony that disputes such assumed savings. The Plaintiffs' experts should be allowed to supplement their reports as to the comparability of the state-operated Centers and as to the alleged $21 million in savings. The Plaintiffs also seek discovery as to the extent and impact of any Legionella at Polk Center. The Plaintiffs

      believe that this additional discovery can be accomplished by additional interrogatories and additional requests for production of documents, and by the touring of all four ICF's by Plaintiffs' experts. The Plaintiffs' experts must be allowed to conduct appropriate interviews of residents, staff, and administrators at the state-operated ICF's. The Plaintiffs do not believe that additional depositions are necessary at this time, but the need may arise for additional depositions depending upon the adequacy of discovery responses and upon the adequacy of any opportunity for the reviews of state-operated ICF's by Plaintiffs' experts.

4.4 Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed:

None at this time.

4.5 For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)). All suggestions in this section are PER SIDE limitations:

4.5.1 additional depositions (excluding experts) to be taken by:

plaintiff(s): 0 at this time defendant(s): 0

4.5.2 additional interrogatories to be served by:

plaintiff(s): 15 defendant(s): 0

Defendants agree to supplement their responses to Plaintiffs' previously served interrogatories, where appropriate and consistent with Fed. R. Civ. P. 26(e)(1). However, in addition to Defendants' above objection to Plaintiffs' three-month delay, Plaintiffs have already exceeded the maximum of 25 interrogatories per party under Fed. R. Civ. P. 33 and, therefore, are not entitled to propound additional interrogatories. In the original Joint Case Management Plan the parties agreed to a limit of 75 interrogatories, which previously had not been exceeded by

the Plaintiffs. Also, the lack of a class certification for over two years, and certification of a class after discovery was first served by the Plaintiffs, along with new developments in the case as to issues needing to be addressed, in the opinion of the Plaintiffs, justifies an additional round of discovery requests. If the Court does not permit a motion to compel as to the previously served discovery, which covered the proposed class but to which the Defendants objected, then the Plaintiffs believe they need more than 15 interrogatories to cover the issues addressed by the newly certified class.

4.5.3 additional document production requests to be served by:

plaintiff(s): 15 defendant(s): 0

Plaintiffs assert that the lack of a class certification for over two years, and certification of a class after discovery was first served by the Plaintiffs, along with new developments in the case as to issues needing to be addressed, in the opinion of the Plaintiffs, justifies an additional round of discovery requests. If the Court does not permit a motion to compel as to the previously served discovery, which covered the proposed class but to which the Defendants objected, then the Plaintiffs believe they need more than 15 requests for production to cover the issues addressed by the newly certified class.

Defendants agree to supplement their prior document productions, as required under Rule 26 (if warranted), but object to any newfound requests for production. Defendants assert that there are no new issues for the purposes of fact discovery which could not have been sought during the original time period for fact discovery. Defendants assert that only expert discovery should be reopened.

4.5.4 requests for admission to be served by:

plaintiff(s): 0 defendant(s): 0

4.6 Discovery of Electronically Stored Information

The parties do not believe there is an issue as to electronically stored information, except to the extent that the Plaintiffs believe they are entitled to more complete and adequate discovery responses.

## 5.0 Protective Order

5.1 If entry of a protective order is sought, attach to this statement a copy of the proposed order. Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.

The parties already submitted a confidentiality agreement (Doc. 131).

5.2 If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

No disputes at this time.

## 6.0 Scheduling

6.1 Final date for joining additional parties:

___NA___________ Plaintiff(s)
___NA___________ Defendants(s)

6.2 Final date for amending pleadings:

__NA____________ Plaintiff(s)

___NA____________ Defendants(s)

6.3 All fact discovery to be supplemented by:
__January 9, 2023_

6.4 All potentially dispositive motions should be filed by: ___NA_______

6.5 Final reports from retained experts due:

from plaintiff(s) by January 23, 2023___________________________

from defendant(s) by February 7, 2023

The Plaintiffs note that they do not object to further reports by Defendants' experts if there is sufficient time to allow that to occur. However, the Plaintiffs do object if, in the interim, many or all residents are moved to the severe detriment of their case.

depositions on final expert reports, if desired, by February 13, 2023

The Plaintiffs note that they do not object to depositions of experts if there is sufficient time to allow that to occur. However, the Plaintiffs do object if, in the interim, many or all residents are moved to the severe detriment of their case.

6.6 Rebuttal expert reports due NA (insufficient time)

depositions on rebuttal reports by NA (insufficient time)

6.7 All expert discovery commenced in time to be completed by February 13, 2023

The Plaintiffs note that they do not object to expert discovery running so late if there is sufficient time to allow that to occur. However, the Plaintiffs do object if, in the interim, many or all residents are moved to the severe detriment of their case. The Plaintiffs had proposed that all discovery be completed by January 15 and all expert reports be due by January 22, but are willing to agree to more time if their case is not greatly diminished or destroyed in the interim by the moves of class members.

6.8 This case may be appropriate for trial:

February 27, 2023

The Plaintiffs note that they do not object to a trial so late if there is sufficient time before many class members are moved. However, the Plaintiffs do object if, in the interim, many or all residents are moved to the severe detriment of their case. The Plaintiffs had proposed that the trial occur in late January, but are willing to agree to a later time if their case is not greatly diminished or destroyed in the interim by the moves of class members.

 

      6.9 Suggested Date for the final Pretrial Conference:

February, 2023 (month/year)

The Plaintiffs note that they do not object to a pre-trial conference so late if there is sufficient time before many class members are moved. However, the Plaintiffs do object if, in the interim, many or all residents are moved to the severe detriment of their case. The Plaintiffs had proposed that the trial occur in late January, but are willing to agree to a later time if their case is not greatly diminished or destroyed in the interim by the moves of class members.

6.10 Trial

6.10.1 Suggested Date for Trial:

February 27, 2023

The Plaintiffs note that they do not object to a trial so late if there is sufficient time before many class members are moved. However, the Plaintiffs do object if, in the interim, many or all residents are moved to the severe detriment of their case. The Plaintiffs had proposed that the trial occur in late January, but are willing to agree to a later time if their case is not greatly diminished or destroyed in the interim by the moves of class members.

**7.0 Certification of Settlement Authority (All Parties Shall Complete the Certification)**

For Plaintiffs:

Counsel hereby certifies that no lone individual Plaintiff or lone representative of the Plaintiffs, or of the Plaintiff class, has settlement authority, and no one individual can give immediate consent to any proposed settlement. Plaintiffs' counsel can reasonably obtain the position of the Plaintiffs as to any proposed settlement.

For Defendants:

Counsel hereby certifies that settlement authority in this matter would vest with the Secretary of the Agency, the Governor, and the Attorney General. Counsel can obtain the position of these individuals if a proposed settlement arises.

## 8.0 Alternative Dispute Resolution ("ADR")

8.1 Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

ADR procedure________None_____________________________

Date ADR to be commenced__________________
Date ADR to be completed__________________

8.2 If the parties have been unable to agree on an ADR procedure, but one or more parties believe that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

NA

8.3 If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

Mediation has failed, and the time remaining until the proposed closures does not allow for the use of ADR.

## 9.0 Consent to Jurisdiction by a Magistrate Judge

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court: YES.

The parties have agreed to the jurisdiction of a magistrate judge after being advised that the assigned Judge lacked the time to address the case.

If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:

      _NA____ Scranton/Wilkes-Barre
_NA____ Harrisburg
_NA_____Williamsport

**10.0 Other Matters**

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

The Plaintiffs are proceeding in good faith to attempt to complete preparation of a class action and preparation for trial in an extremely short time period. However, adequate preparation may prove to be an impossibility.

**11.0 Identification of Counsel**

Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures. Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy. Any request for waiver of electronic filing must be filed with the Clerk's Office prior to the case management conference. The Chief Judge may grant or deny such request.

Identify by name, address, and telephone number lead counsel for each party. Also please indicate ECF User status below.

Dated: 11/28/2022 Thomas B. York

Attorney(s) for Plaintiff(s)
Yes ECF User(s)
No Waiver requested (as separate document)
No Fed.R.Civ.P.7.1 (statement filed if necessary)*

Dated: 11/28/2022 Matthew Skolnik and Nicole DiTomo

Attorneys(s) for Defendant(s)
Yes ECF User(s)
No Waiver requested (as separate document)

No    Fed.R.Civ.P.7.1 (statement filed if necessary)*

* Fed.R.Civ.P.7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.