IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| **RUSSEL "JOEY" JENNINGS,** *et al.*, | : | Civil No. 3:20-CV-148 |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Magistrate Judge Carlson** |
| | : | |
| **TOM WOLF,** *et al.*, | : | |
| **Defendants.** | : | *Electronically Filed Document* |

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFFS' "RENEWED" MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendants[1], through their undersigned counsel, hereby submit this brief in opposition to Plaintiffs' "renewed" (third) motion for preliminary injunction and temporary restraining order (Doc. 171, hereafter the "Motion"). In short, although Defendants strongly oppose Plaintiffs' Motion on its purported merits, it is procedurally improper in that it violates the law of the case as of November 2, 2022 and constitutes an untimely motion for reconsideration in disguise – all while raising no intervening change in controlling law, no relevant evidence that was not available at the evidentiary hearing, and no clear error of law or fact.

---

[1] Tom Wolf, Acting Secretary Meg Snead, Kristin Ahrens, Sue Rodgers, Mark J. Georgetti, Pennsylvania Department of Human Services ("DHS"), Pennsylvania Office of Development Programs, Polk Center, and White Haven Center. These latter three defendants are mere subdivisions of Defendant DHS and are not proper defendants (nor are Rodgers and Georgetti proper defendants, albeit for different reasons).

I.  **RELEVANT PROCEDURAL BACKGROUND**

A seven-day evidentiary hearing was held beginning October 18, 2022 and concluding October 28, 2022. *See* Doc. 160, at 4, note 1. At the invitation of this Court (Carlson, M.J.), on October 31st, Plaintiff's counsel, Thomas York, Esquire emailed the Court as follows (in relevant part):

> At the closing arguments on October 28, 2022, Judge Carlson invited further comment from the Plaintiffs on the "obverse *Olmstead* argument." His Honor stated that this further comment could be by email. If the Plaintiffs' counsel misunderstood the invitation, and if a formal brief is required, please advise Plaintiffs' counsel. *Since this further comment is based entirely on previously filed documents,* **further formal briefing is probably not necessary**.

(Email from T. York to K. Neary, attached hereto as **Exhibit 1** (emphasis added)).

The Court denied Plaintiffs' first and second motions for preliminary injunction and/or temporary restraining order (Docs. 81 & 125) on November 2, 2022. (Doc. 161.) No motion for reconsideration of that Order was ever filed. Instead, on December 1, 2022 – three days after submitting a Joint Case Management Plan (Doc. 164) and one day after participating in a 45-minute case management conference with the Court and defense counsel – Plaintiffs filed a Notice of Interlocutory Appeal (Doc. 167).

Despite the pending interlocutory appeal and despite agreeing to a February 27, 2023 trial date, Plaintiffs filed the present Motion in this Court on December 9, 2022. Plaintiffs' brief in support thereof (Doc. 175) was filed December 23rd. This

2

Court granted Defendants an extension of two business days to file the within response.

## II.   COUNTER-STATEMENT OF RELEVANT FACTS

In the interest of economy, Defendants incorporate herein by reference the Court's findings of fact (*see* Mem. Op. of Hon. Martin C. Carlson, Doc. 160 (11/2/22), at pp. 4-27), as if stated fully herein with the exception of three words.[2]

For the most part, the holes in Plaintiffs' Motion speak for themselves but three specific factual allegations require correction. **One**, Plaintiffs claim that DHS's projected cost savings of $21 million is "highly suspect," especially when "compared to the overall $5 billion budget for these services." (Pls.' Brief (Doc. 175), at 3. First, no "overall $5 billion budget" for IID/IDD-related services exists in Pennsylvania. Second, and more importantly, Defendants *have* provided evidence supporting the projected $21 million in fixed costs savings. *See* Cost Summary attached hereto as **Exhibit 2**, at 1 (column: "Fiscal Year Total 2023-2024"; bottom row at "Total" of $21,351,805). Thus, the Court's reliance on PA-DHS's (through Ms. Ahrens, *see* Doc. 160 at 16) quoted $21 million in cost savings was not only justified but has been substantiated in discovery. Finally,

---

[2] Those three words are "made in January" in the phrase "a decision was made in January of 2019 to close . . ." on page 11 of the Court's erudite Opinion. Defendants seek not to challenge the Court's findings of fact but, instead, merely seek to not adopt those three words in light of the closure being proposed by then-Secretary Miller on July 23, 2019 and announced on August 14, 2019. (This information was provided to Plaintiffs' counsel, in a document Bates-labeled PADHS_00019-029, but was not expressly introduced at the hearing due to the document having been designated as confidential. Defendants regret any misunderstanding of the relevant timing.)

if the projected $21 million in savings is to be "critically reviewed," Plaintiffs have laid no foundation for how the previously undisclosed Mr. Harriger (*see* Doc. 171-1, ¶ 9) would be qualified to conduct such a review or render *any* opinion as to the accuracy of the Commonwealth's Budget Office projections in Exhibit 2 hereto, among other sources.

**Two**, Plaintiffs gleefully assert that the absence of deaths from Legionnaires somehow disproves any serious health problems related to Polk Center. (Pls.' Brief at 3.) This argument is misleading, in that it disregards the obvious role of Defendants' counter-measures and remediation – such as the boil water advisory at Polk, the use of bottled water, the reduction of faucets and showers used, and other safe drinking water measures discussed at the October hearing – in protecting the residents and staff of Polk Center from Legionella. Moreover, a case of Legionella was reported at Polk Center before this lawsuit; fortunately, the resident did not develop Legionnaires disease. Under no interpretation can the undisputed Legionella in Polk Center's water system be considered an overblown threat.

**Three**, Plaintiffs' Motion (although not in their brief) identifies eleven residents who, allegedly, suffered "recent deaths or bad results" after being transferred. *See* Pls.' Mot. (Doc. 171), ¶ 5(a)-(k). Oddly in the sense of being unrelated to Plaintiffs' proposed injunctive relief, *five of the eleven* residents admittedly were moved to settings other than Ebensburg or Selinsgrove State Centers. In addition:

- Five of the "bad results" are not in fact "recent" and predate the October 2022 hearing[3], during which no evidence concerning these residents was offered by the plaintiffs;

- Two of the residents died of cancer and, with respect to the resident who fell, her neuro-checks after the fall were normal – instead, she was admitted to the hospital with, *inter alia*, acute pancreatitis; and,

- Four of the eleven residents were either discharged from the hospital with no further hospitalizations or denied admission to the hospital.

Plaintiffs' *apparent* allegation that, but for Defendant DHS's closure transition planning these bad results would not have occurred, is as unsupported as it is unseemly.

## III.   ARGUMENT

### A.   Plaintiffs' Motion Violates the Law of the Case.

Plaintiff's "renewed" Motion is barred by the law of the case. Although the Supreme Court has called the doctrine "an amorphous concept," there is no question that, absent extraordinary circumstances, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The law

---

[3] Out of respect for the residents' privacy, we will not use even their initials; the relevant dates are stated in Plaintiffs' Motion itself, at paras. 5(d), (e), (h), (j), (k).

of the case "does not restrict a court's power but rather governs its exercise of discretion." In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 439 (3d Cir. 2009) (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, 123 F.3d 111, 116 (3d Cir. 1997)).

After its Arizona decision, the Supreme Court clarified that "extraordinary circumstances" would include, for example, cases "where the initial decision was clearly erroneous and would make a manifest injustice." Id., 582 F.3d at 439 (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)); see also Int'l Union of Bricklayers & Allied Craftworkers, Loc. 5 v. Banta Tile & Marble, C.A. No. 4:07-1245, 2009 WL 4906525, at *2 (M.D. Pa. Dec. 15, 2009) ("As Magistrate Judge Carlson correctly notes, the doctrine of the law of the case specifically cautions against the course of action that Defendant invites us to take. The doctrine instructs that "once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances .... The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration.'" (quoting Hayman Cash Register, Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1981)) (adopting R & R of Carlson, M.J.) (alteration in original).

The present Motion does not even come close to meeting the above standards. Neither the evidence nor the law has changed since this Court's November 2, 2022 decision. As this Court has made abundantly clear, there is no legal basis to "direct[] the state to operate two ICF centers which it has determined

should be closed" when there is at least one such facility (in fact two, Ebensburg and Selinsgrove State Centers) remaining open. *See* Mem. Op. of Hon. Martin C. Carlson (Doc. 160), at 41-42 ("entirely unprecedented"). Yet, without citation and, more importantly, **without any evidence** that the following has *not* occurred, Plaintiffs argue that, "Any moves from one state Center to another state Center must consider the comparative level of integration and whether an individual's needs can be met." Pls.' Brief at 5.

On the contrary, the record is clear that all four state-operated ICFs are similarly situated and are subject to the same regulations and standards of care. Moreover, this Court clearly and convincingly explained that "our research has not yielded any authority, and the parties have not provided us with any authority that recognizes an ADA violation based on the transfer of an intellectually disabled person from one state-operated ICF to another comparable ICF." 11/2/22 Mem. Op. (Doc. 160) at 43. See also Ball v. Kasich, 520 F. Supp. 3d 979, 984 (S.D. Ohio 2021), *reconsideration denied*, 2022 WL 16926291 (S.D. Ohio Nov. 14, 2022) (noting that even a "failure to provide [*any*] facility-based services does not constitute discrimination under the ADA or Rehabilitation Act.") (citing case law, including but not limited to Sciarrillo v. Christie, 2013 WL 6586569, at *4 (D.N.J. Dec. 13, 2013)).

Essentially, Plaintiffs' present Motion asks this Court to render the extraordinary remedy of a TRO and the reversal of the interlocutory order

currently being appealed, to stop something which *everyone agrees* the Commonwealth is permitted to do – an order which, indisputably, would be without precedent. Mem. Op. (Doc. 160) at 60 ("The relief sought here is truly unprecedented."). See also id. at 39 (quoting 50 Pa. Stat. Ann. § 4416(a)). In doing so, Plaintiffs seek to distinguish the Sciarrillo opinion as well as other authority cited in this Court's November 2nd Opinion (*see* Mem. Op. at 41-43) by citing to (at pp. 6-8), Steimal v. Wernert, 832 F.3d 902 (7th Cir. 2016). The latter case is inapposite, for it expressly concerned placements in community/group home settings, see id. at 911. Furthermore, this authority was previously raised before this Court, in that it was extensively briefed in Plaintiffs' counsel's email attached hereto as Exhibit 1 – about which, Mr. York stated, "further formal briefing is probably not necessary."

In sum, there are no extraordinary circumstances which would warrant disturbing the law of the case.

### B. There Are No Grounds for Reconsideration of the Court's November 2nd Order and Opinion.

In the alternative, Plaintiffs' Motion could be viewed as an untimely motion for reconsideration. *See* Fed. R. Civ. P. 52(b) (within 28 days); Rule 60(c)(1) ("within a reasonable time"); *see also* Fed. R. Civ. P. 59(e) ("28 days after the entry of judgment"); *but see* Rule 60(a) ("after an appeal has been docketed in the

8

appellate court and while it is pending, such a [purported] mistake may be corrected only with the appellate court's leave.").

There are three potential grounds for a motion for reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion [originally at issue]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see* Fed. R. Civ. P. 59. Such motions should be granted "sparingly." *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 801 F. Supp. 2d 333, 334 (E.D. Pa. 2011); *see also Ehrheart v. Lifetime Brands, Inc.*, 498 F. Supp. 2d 753, 757 (E.D. Pa. 2007) ("an extraordinary remedy to be employed sparingly"). Of course, Defendants do not dispute that the Plaintiffs have not called their Motion a "motion for reconsideration" – but that would be one result of their presenting previously argued legal theories with no intervening change in the law or new evidence.[4]  Thus, it appears Plaintiffs (at least impliedly) seek to invoke the third criterion: "the need to correct a clear error of law or fact or to prevent manifest injustice." No such errors or manifest injustice exist in the fulsome record before this Court.

---

[4] Contrary to the Court's Local Rule 7.1, Plaintiffs' counsel did not confer with defense counsel before filing the present Motion, although counsel did confer regarding the prior (second) motion, leaving the undersigned to guess as to whether a motion for reconsideration was intended.

Importantly given the redundant nature of Plaintiff's pending motion, a party may not invoke a motion for reconsideration as a means to relitigate matters of disagreement with the court. *See Boretsky v. Governor of N.J.*, 433 Fed.Appx. 73, 78 (3d Cir. 2011); *see Dodge v. Susquehanna Univ.*, 796 F.Supp. 829, 830 (M.D. Pa. 1992) (Rule 59 motions are "not to be used as a means to reargue matters already argued and disposed of by prior rulings) (quotation omitted). Nor should motions for reconsideration a disappointed litigant with a "second bite at the apple." *See PBI Performance Prods. v. NorFab Corp.*, 514 F.Supp.2d 732, 744 (E.D. Pa. 2007) (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)). In the present case, Plaintiffs' Renewed Motion actually constitutes their third "bite at the apple," in that their first and second motions for preliminary injunctive relief (Docs. 81 & 125) sought substantially the same injunction sought here – namely, to prevent, *inter alia*, the closures of Polk and White Haven State Centers.

Consequently, to the extent Plaintiffs' Motion is to be viewed as a motion for reconsideration, there simply are no applicable grounds for reconsideration of this Court's November 2, 2022 Order and Opinion.

### III. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' "Renewed Motion" for Temporary Restraining Order and Preliminary Injunction. Further, because a fulsome evidentiary record already exists, upon which this Court rendered its findings of fact, and because this Court has already ruled upon substantially the same issues presented in Plaintiffs' Renewed Motion, no further evidentiary hearing prior to trial is warranted.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

Date: January 10, 2023    By:    */s/ Matthew Skolnik*
                                                  Matthew Skolnik

Office of Attorney General — Deputy Attorney General
1600 Arch Street, Suite 300 — Attorney ID No. 89423
Philadelphia, PA 19103
Phone: (215) 560-2136 — Nicole R. DiTomo
Fax:    (717) 772-4526 — Senior Deputy Attorney General
mskolnik@attorneygeneral.gov

                                                  Karen M. Romano
                                                  Chief Deputy Attorney General
                                                  Civil Litigation Section

                                                  *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Matthew Skolnik, hereby certify that the foregoing Defendants' Brief in Opposition to Plaintiffs' "Renewed Motion" for Temporary Restraining Order and Preliminary Injunction has been filed electronically on this 10th day of January, 2023 and is available for viewing and downloading from the Court's Electronic Case Filing system by all counsel of record.

           *s/ Matthew Skolnik*
           MATTHEW SKOLNIK
           Deputy Attorney General